12/30/2022 8:41 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71379081
By: Joshua Hall
Filed: 12/29/2022 5:17 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **BETH B. CHERAMIE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **MTGLQ INVESTORS, L.P., and** | § | _____ **JUDICIAL DISTRICT** |
| **NEWREZ LLC f/k/a NEW PENN** | § | |
| **FINANCIAL, LLC d/b/a SHELLPOINT** | § | |
| **MORTGAGE SERVICING, its/their** | § | |
| **successors and/or assigns,** | § | |
| | § | |
| **Defendants.** | § | **OF HARRIS COUNTY, TEXAS** |

### PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Beth B. Cheramie, hereinafter called Plaintiff, complaining of and about MTGLQ Investors L.P. and NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, its/their successors and/or assigns, as Defendants, and for her claims and causes of action set forth herein below, and respectfully shows unto the Court the following:

### I.

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

### II.

### PARTIES AND SERVICE

2.      Plaintiff, Beth B. Cheramie ("Plaintiff"), is an individual whose present address is 21614 Bay Palms Drive, Katy, Texas 77449. The last three digits of Plaintiffs driver's license number are XXX, and the last three digits of his social security number are XXX.

EXHIBIT
C1

3.      Defendant, MTGLQ Investors, L.P. ("MTGLQ"), is a foreign limited partnership doing business in the State of Texas and purports to be the current mortgagee and holder and owner of Plaintiff's mortgage loan made the subject of this suit, and may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201. Service of process upon said Defendant as described above can be effectuated by personal delivery to its registered agent identified herein.

4.      Defendant, NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), is a foreign limited liability company doing business in the State of Texas and purports to be the current mortgage loan servicer of Plaintiff's mortgage loan made the subject of this suit, and may be served with process by serving its registered agent Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701. Service of process upon said Defendant as described above can be effectuated by personal delivery to its registered agent identified herein.

**III.**

**JURISDICTION AND VENUE**

5.      The subject matter in controversy is within the jurisdictional limits of this court.

6.      Plaintiff seeks:

        a.      monetary relief of more than $100,000, including damages of any kind, including penalties, costs, expenses, pre-judgment interest, and attorney's fees; and,

        b.      injunctive relief in the form of a temporary restraining order and temporary injunction.

7.      This court has personal jurisdiction herein because the defendants routinely engage in or transact business with sufficient minimum contacts in the State of Texas.

8.      Venue is proper in Harris County, Texas in this cause pursuant to TEX. CIV. PRAC. & REM. CODE §15.011 et seq., and because this action involves real property that is situated entirely in Harris County, Texas.

### IV.

### FACTUAL ALLEGATIONS

9.      On May 12, 1994, Plaintiff purchased the real property and improvements commonly known as 21614 Bay Palms Drive, Katy, Texas 77449, and legally described, to wit:

> **LOT TWENTY-FOUR (24), IN BLOCK EIGHT (8) OF WESTFIELD VILLAGE, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 293, PAGE 53 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS ("Property"),**

which is the Plaintiff's homestead. At all relevant and material times hereto, Plaintiff was and is fee simple owner of the subject Property. A true and correct copy of the General Warranty Deed With Vendor's Lien to evidence Plaintiff's fee simple title and ownership of the subject property and recorded as Instrument No. P874651 in the official real property records of the Harris County Clerk's office is attached hereto marked Exhibit "A" and incorporated herein by reference for all purposes.

10.     At that same time, May 12, 1994, Plaintiff applied for and obtained a mortgage loan from North American Mortgage Company ("original lender") evidenced by a promissory note in the original principal amount of $72,701.00 ("Note") and secured by a Deed of Trust of even date to Charles M. Jackson, Jr., as Trustee. A true and correct copy of the Deed of Trust recorded as Instrument No. P874650 in the official real property records of the Harris County Clerk's office is attached hereto marked Exhibit "B" and incorporated herein by reference for all purposes. The Note and Deed of Trust are hereinafter referred to a "Plaintiff's Loan".

11.     On or about January 7, 2021, Plaintiff was sent to the emergency room and admitted for a Type 2 diabetic ulcer on the bottom of her left foot. A surgery was immediately performed on her left foot. Thereafter, Plaintiff had an immediate second surgery two days after her initial surgery. Plaintiff Beth was then admitted to an assisted living facility to heal before she was discharged to go home.

12.     On or about February 2, 2021, Plaintiff returned to her home after being discharged from the assisted living facility and to her utter shock and dismay she came home to a flooded house. Plaintiff immediately filed a claim with her homeowners insurance company for the water damage caused by a burst pipe that froze during the "2021 Texas freeze" while she was recovering from her two surgeries at the assisted living facility and informed the original lender of the flooding. At that point, the subject property was uninhabitable. Thereafter, Plaintiff was forced to reside in a hotel as she waited for repairs to be made to the subject property because the water damage created a mold issue that rendered the home uninhabitable until mold remediation repairs could be completed. Plaintiff also had several follow up doctor appointments for surgical wound care throughout the remainder of February 2021. Many of the doctor visits were with specialists which meant that she also had to pay the co-pay with each of those visits.

13.     On March 15, 2021, Plaintiff was involved in an automobile accident which caused extensive damage to her vehicle, and for which she had to pay the insurance deductible to repair her vehicle. With all of these hardships seemingly occurring at the same time, Plaintiff began falling behind on her monthly mortgage payments, and the out-of-pocket medical co-payments and insurance deductibles that she had to pay for both the home repairs and the vehicle repairs.

14.     On April 12, 2021, Plaintiff then had cataract eye surgery on her left eye, which caused her even more financial hardship. From April 2021 through June 2021, Plaintiff was in and out of the hospital emergency room for various health reasons related to her diabetes. The medical bills continued to pile up as Plaintiff continuously worked to overcome her health issues all while dealing with contractors who were attempting to administer repairs to the property, while she continued to live in a hotel room.

15.     On or about July 13, 2021, Plaintiff filed another insurance claim regarding the house as there was a severe storm that caused hail damage to the roof of the subject property. Plaintiff again had to pay another deductible for these additional repairs.

16.     All throughout September 2021 and October 2021, Plaintiff met with the contractors and paid additional out-of-pocket for many of the ongoing repairs, even though insurance claims had been made and all while dealing with her ongoing health issues and undergoing two (2) additional surgeries on her feet. The stress of the stacking mortgage bills, hospital confinement, and additional medical bills along with dealing with the contractor repairs was wearing heavy on the Plaintiff.

17.     On or about December 3, 2021, Plaintiff received a phone call from Select Portfolio Servicing (SPS), who was the servicer of her loan at that time, who told Plaintiff that based upon an inspection report they would issue Plaintiff a check from the restricted escrow account to pay for repairs. On December 9, 2021, Plaintiff was able to move back into the subject property.

18.     On or about December 21, 2021, Plaintiff went to her doctor for her first lymphedema appointment. The head nurse knows Plaintiff well from her weekly wound care appointments and noticed that Plaintiff was not acting like herself, and then had her transported

to the emergency room. Plaintiff was admitted to the hospital and was told for the first three (3) days to get her affairs in order because she had sepsis and was dying due to the infection in her body. Plaintiff was immediately treated for sepsis and was later transported to an assisted living facility where Plaintiff contracted Covid-19. Plaintiff was then transported back to the hospital. After a few days, Plaintiff was transported to yet another assisted living facility.

19.    All throughout February 2022 through August 2022, Plaintiff was continuously in and out of the hospital for various health reasons. Plaintiff kept falling further and further behind on her monthly mortgage payments.

20.    On or about December 9, 2022, Plaintiff called SPS, whom she thought was still the servicer, to make a payment on the loan. Plaintiff was informed by SPS that the servicing of her mortgage loan had been transferred to Defendant Shellpoint, and was given Shellpoint's phone number. Plaintiff immediately called Defendant Shellpoint and was advised that her loan was in foreclosure status. This was the first and only notice that Plaintiff ever received regarding a pending foreclosure—verbally over the phone. At that time, Plaintiff asked for a payoff quote and was told by Defendant Shellpoint that it would be provided by mail.

21.    On December 16, 2022, Plaintiff once again called Defendant Shellpoint and spoke with a representative by the name of "Dominic" who told Plaintiff that she was behind $18,489.63. Plaintiff was then told that if she put down $13,000.00, then her new monthly payments would be $2,404.69 per month. Dominic also told Plaintiff that Defendant Shellpoint would not agree to that because of the debt-to-income ratio. "Dominic" then told Plaintiff that her account manager was "Karen Chacon" and provided Plaintiff with "Karen's" extension.

22.    On December 19, 2022, Plaintiff called Defendant Shellpoint and spoke with a different employee. The employee at Shellpoint told Plaintiff that she was $18,504.63 behind and

that the reinstatement amount was $18,854.20, which included foreclosure fees. Plaintiff then asked to speak with a supervisor and was transferred to "Stephanie St. Martin". Plaintiff was told by "Stephanie" that she would put in a request to Defendant Shellpoint to see whether Shellpoint would be wiling to cancel the foreclosure sale if Plaintiff tendered a payment of $13,500.00. Plaintiff asked "Stephanie" for her direct extension and "Stephanie" provided Plaintiff with her extension number.

23.     On December 20, 2022, Plaintiff informed her homeowners insurance that her new mortgage company is Defendant MTGLQ and the new servicer is Defendant Shellpoint.

24.     On December 21, 2022, Plaintiff tried to call "Stephanie" at Shellpoint, but the extension that she was provided with was not a working extension. Plaintiff then called the main number for Shellpoint and spoke with "Terra". "Terra" told Plaintiff that if she tendered a payment of $15,500.00, then her new monthly payments would be $1,455.43 per month, but then immediately changed the requirement to $1,838.68. "Terra" then told Plaintiff that she would send the request to Shellpoint for approval. Plaintiff emailed Defendant Shellpoint informing them that her homeowners insurance needed proof that Defendant Shellpoint was indeed the new mortgage company and requested that Defendant Shellpoint email the appropriate documents to her so that she could forward the same to her homeowners insurance company. Defendant Shellpoint emailed Plaintiff back stating they were working on the request.

25.     On December 22, 2022, Plaintiff began receiving advertisements from investors stating they can help stop her house from going to foreclosure. Plaintiff was shocked to her conscious as she never received any type of written foreclosure notice from the Defendants.

26.     On December 27, 2022, Plaintiff again called Defendant Shellpoint and this time spoke to yet another different employee named "Sarah". "Sarah" told Plaintiff that she needed to

contact the foreclosure attorneys at Aldridge Pite LLP and provided her with their phone number. Plaintiff immediately contacted the law firm and spoke with "Paavo" who stated the foreclosure had been put on hold and that the foreclosure would not happen until Defendant Shellpoint changed the "hold" status. "Paavo" also told Plaintiff to call the Loss Mitigation Department at Shellpoint and provided her with their phone number, and told Plaintiff not to call the customer service number and to make sure to speak with someone in the Loss Mitigation Department and inquire whether the account was truly on hold. Plaintiff quickly followed the instructions she was provided and called Shellpoint's Loss Mitigation department. Defendant Shellpoint told Plaintiff that the foreclosure sale was NOT ON HOLD and was going to proceed on January 3, 2023. Plaintiff then did a three way call with "Amanda" in Shellpoint's Loss Mitigation Department and "McKenzie" at Aldridge Pite. "McKenzie" stated that Aldridge Pite's records showed that the foreclosure was "on hold" but "Amanda" at Shellpoint stated that on Shellpoint's end it showed "not on hold". Given the ongoing discrepancies and inconsistencies between Defendant Shellpoint and its foreclosure counsel, Plaintiff felt as though she had no other choice but to hire and retain the Helstowski Law Firm to find the notice of foreclosure sale and seek to stop the foreclosure sale of her homestead property. A true and correct copy of the Notice of Substitute Trustee's Sale that undersigned counsel for the Plaintiff obtained through the Harris County Clerk's office is attached hereto marked Exhibit "C" and incorporated herein by reference for all purposes.

27.     At no point has Defendant Shellpoint or Defendant MGTQL, nor any prior lender or servicer ever provided Plaintiff with the required Notice of Default and Opportunity to Cure notice, nor the 30-day period to cure the default as expressly set forth in paragraph 21 of the Deed of Trust and TEX. PROP. CODE §51.002(d). Moreover, at no point has Plaintiff ever

received the Notice of Substitute Trustee's Sale (Exhibit "C") nor any other notices from Defendants Shellpoint or MTGLQ.

## V.

### FIRST CAUSE OF ACTION – APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

28.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV above as if fully set forth herein.

29.     Pursuant to Rule 680 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks immediate relief in the form of a Temporary Restraining Order wherein this Court orders, restrains and prohibits the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns from foreclosing or attempting to foreclose on Plaintiff's homestead property for a period of at least fourteen (14) days until a temporary injunction hearing is held by this Court concerning whether Plaintiff has a probable right of recovery for her various claims and causes of action pleaded herein.

30.     Moreover, after issuance of a temporary restraining order, and upon notice and a hearing as required by law, Plaintiff further seeks entry of a Temporary Injunction to maintain the status quo and prohibit the Defendants, and/or any of its/their agents, employees, attorneys, trustees, substitutes trustees, successors and/or assigns from foreclosing or attempting to foreclose on Plaintiff's homestead property until the merits of Plaintiff's various claims and causes of action as pleaded herein can be fairly and fully adjudicated.

## VI.

### SECOND CAUSE OF ACTION – BREACH OF CONTRACT AND FAILURE OF CONDITION PRECEDENT

31.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV and V above as if fully set forth herein.

32.     The acts, conducts or omissions of the Defendants as described herein, *supra*, also constitute a material breach of the Deed of Trust and a violation of the Texas Property Code, and a failure of condition precedent as to their acceleration of the Plaintiff's Loan and posting of Plaintiff's homestead property for foreclosure sale, and which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

33.     Specifically, the Defendants were required under both the Deed of Trust and the Texas Property Code to provide Plaintiff with a written Notice of Default and Opportunity to Cure notice as expressly required under paragraph 21 of the Deed of Trust and TEX. PROP. CODE §51.002(d), and failed to provide such notice and the 30-day period within which to cure the default before accelerating the Loan and posting the property for foreclosure sale, and such failure to provide said notice constitutes a material breach of the Deed of Trust and a failure of condition precedent that must occur before the power of sale provision in the Deed of Trust can be exercised, and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

34.     Further, since Plaintiff was not provided with the required notice of default and opportunity to cure notice, Plaintiff has also been denied her right to reinstate after acceleration as set forth in paragraph 18 of the Deed of Trust since she has no information as to the exact amount to cure the default (reinstate), which is another separate and distinct breach of the Deed of Trust contract, and a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

35.     Moreover, as Plaintiff was not provided with the Notice of Substitute Trustee's Sale either, Defendants are in further breach of paragraph 21 of the Deed of Trust for failing to provide such notice at least 21 days prior to the foreclosure sale. As set forth herein, *supra,* the only notice of any pending foreclosure sale that was provided by Defendant Shellpoint to Plaintiff was in the form of a verbal statement made by an employee during a phone call, which is yet another breach of the Deed of Trust and Texas Property Code.

## VII.

### THIRD CAUSE OF ACTION – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

36.     Plaintiff hereby incorporate by reference and realleges all material allegations of act set forth in Sections IV, V, and VI, above as if fully set forth herein.

37.     The acts, conduct and/or omissions of the Defendant Shellpoint, which at all times was acting in its capacity as a "debt collector collecting the debt of due another that was past due when it began servicing the loan" of failing, neglecting, or refusing to ever provide Plaintiff with any required Notice of Default and Opportunity to Cure notice as required under the express terms of the Deed of Trust and TEX. PROP. CODE §51.002(d) prior to acceleration and posting of her homestead property for foreclosure sale, and of failing to provide her with any details of how much was actually claimed due and owing, as well as failing to provide Plaintiff with the Notice of Substitute Trustee's Sale, each constitute the intentional and/or knowing misrepresentation of the character, amount or extent of the debt to be collected in violation of the Texas Debt Collection Act, TEX. FIN. CODE §392.001 et seq., and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

38.     Specifically, the acts, conduct, or omissions of the Defendants constitute violations of the following provisions of the Texas Debt Collection Act: §392.301(a)(8) - threatening to take an action prohibited by law; and §392.304(a)(8) – misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and §392.304(a)(19) – using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer, and which violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

39.     As each of the acts, conduct, and/or omissions of the Defendants as described herein that constitute violations of the Texas Debt Collection Act and were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seeks an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## IX.

## **EXEMPLARY DAMAGES**

40.     Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, and VIII above as if fully set forth herein.

41.     Plaintiff would further show that the various acts, conduct and/or omissions of each of the Defendants complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and pre-determined intention of enriching said Defendant at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks

recovery from Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

## X.

### <u>ATTORNEY'S FEES</u>

42.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 37.001 et seq. of the Texas Civil Practices and Remedies Code,  (b) the Texas Debt Collection Act, Tex. Fin. Code §392.001 et seq.,

## XI.

### <u>JURY DEMAND</u>

43.     Plaintiff hereby requests that all issues of fact be tried before a jury.

## XII.

### <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Beth B. Cheramie, respectfully prays that the Defendants be cited to appear and answer herein, and that Plaintiff be granted immediate relief in the form of a temporary restraining order and temporary injunction preventing the Defendants, and/or any of its/their respective agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns from foreclosing or attempting to foreclose upon Plaintiff's homestead property as described herein until the merits of her various claims and causes of action pleaded herein may be fairly adjudicated; and that upon the final trial of this

cause, that judgment be entered in favor of Plaintiff, and against Defendants, for breach of contract and failure of condition precedent, and for violations of the Texas Debt Collection Act; and for an award of all economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, including exemplary damages, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, and for an award of all attorney's fees and costs of court incurred, and for such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

*/s/ John G. Helstowski*
John G. Helstowski
Texas State Bar No. 24078653
5209 Heritage Ave., Suite 510
Colleyville, TX 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiff Beth B. Cheramie

## VERIFICATION

STATE OF TEXAS          §

COUNTY OF <u>Harris</u>         §
                                      §

"My name is <u>Beth B. Cheramie</u> I am the Plaintiff named in the attached and foregoing PLAINTIFF'S ORIGINAL VERIFIED PETITION. I am over the age of 21 years and have never been convicted of a felony or other crime involving moral turpitude. I have personal knowledge of all of the facts set forth in the PLAINTIFF'S ORIGINAL PETITION and hereby state that every factual statement set forth therein is true and correct.

FURTHER AFFIANT SAYETH NOT."

EXECUTED this 28th day of <u>December</u>,

2022.

<u>Beth B. Cheramie</u>          <u>Beth B. Cheramie</u>
Signature                                 Print

SUBSCRIBED AND SWORN BEFORE ME on this 28th day of <u>December</u>, 2022, by Client, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

Rachel Riboza
Printed Name of Notary Public

My Commission Expires on: <u>12-03-2023</u>

(seal)





*J. Gannon Helstowski Law Firm P.C.*

WA2A
GENERAL WARRANTY DEED WITH VENDOR'S LIEN          94113219 / 06 / 10  T90484-614

F874651

STATE OF TEXAS

COUNTY OF HARRIS                    }                    Know All Men by These Presents

THAT   H. C. ELLIOTT, HOMES, INC. , A TEXAS CORPORATION          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

of HARRIS              County, TEXAS      , hereinafter called GRANTOR (whether one or more), for and in consideration

of the sum of TEN and no/100 DOLLARS ($10.00) cash and other good and valuable consideration to GRANTOR in hand paid by
BETH B. CHERAMIE , A FEME SOLE

whose mailing address is:
21014 BAY PALMS DRIVE, KATY, TX  77449
hereinafter called GRANTEE (whether one or more), the receipt and sufficiency of which are hereby acknowledged, and the further

consideration of SEVENTY TWO THOUSAND SEVEN HUNDRED ONE AND 00/100
                                                                                              DOLLARS

($       72,701.00    ) paid by  NORTH AMERICAN MORTGAGE COMPANY,

hereinafter called BENEFICIARY, at the special instance and request of GRANTEE, the receipt and sufficiency of which is hereby
acknowledged and confessed, and as evidence of such advancement GRANTEE has executed GRANTEE'S note of even date herewith for
said amount payable to the order of BENEFICIARY, said note payable as therein provided and bearing interest at the rate therein specified,
and the payment of said note is secured by a vendor's lien herein reserved and is additionally secured by a deed of trust of even date
herewith, executed by GRANTEE to CHARLES M. JACKSON, JR.                                    TRUSTEE,
reference to which is hereby made for all purposes; and in consideration of the payment of the sum above mentioned by BENEFICIARY,
GRANTOR hereby transfers, sets over, assigns and conveys unto BENEFICIARY and assigns, the vendor's lien and superior title herein
retained and reserved against the property and premises herein conveyed, in the same manner and to the same extent as if said note had
been executed in GRANTOR'S favor and assigned by GRANTOR to BENEFICIARY without recourse; and GRANTOR has BARGAINED,
GRANTED, SOLD and CONVEYED, and by these presents does BARGAIN, GRANT, SELL and CONVEY unto GRANTEE, the following
described property, to-wit:

    LOT TWENTY-FOUR (24), IN BLOCK EIGHT (8) OF WESTFIELD VILLAGE,
    SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING
    TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 293, PAGE 53 OF
    THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

        together with Grantor's right, title and interest in all system memberships and/or ownership certificates in any non-municipal water
and/or sewer systems serving said property;

        TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in
anywise belonging unto GRANTEE, GRANTEE'S heirs and assigns forever, And GRANTOR does hereby bind GRANTOR, GRANTOR'S
heirs and executors and administrators, to warrant and forever defend, all and singular the said premises unto GRANTEE, GRANTEE'S
heirs and assigns, against every person whomsoever claiming or to claim the same or any part thereof.

        This Deed is executed, delivered and accepted subject to all and singular any liens securing the payment of any debt created or
assumed in connection herewith if such liens are described herein, ad valorem taxes for the current and all subsequent years, subsequent
assessments for prior years due to changes in land usage or ownership, zoning ordinances, utility district assessments and standby fees, if
any, applicable to or enforceable against the above described property, and all valid utility easements created by the dedication deed or plat
of the subdivision in which said real property is located, covenants, restrictions common to the platted subdivision in which said real
property is located, mineral reservations, maintenance fund liens, discrepancies, conflicts, shortages in area or boundary lines,
encroachments or protrusions, or overlapping improvements, and any title or right asserted by anyone, including, but not limited to, persons,
corporations, governments or other entities to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams,
lakes, bays, gulfs, or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any
government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interests of the
State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access
thereto, or right of easement along and across the same, if any, applicable to and enforceable against the above described property as shown
by the records of the County Clerk of the County in which said real property is located.

        But it is expressly agreed and stipulated that the vendor's lien and superior title are retained in favor of the payee in said note
against the above described property, premises and improvements, until said note and all interest thereon is fully paid according to the face
and tenor, effect and reading thereof, when this deed shall become absolute.

        When this deed is executed by more than one person, or when GRANTOR or GRANTEE is more than one person, the instrument
shall read as though pertinent verbs and pronouns were changed to correspond; and when executed by or to a corporation, the words "heirs,
executors, and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns."

EXECUTED, this the    12TH    day of    MAY         , 19 94 .



                                                H. C. ELLIOTT, HOMES, INC.

                                                BY:
                                                NAME: CHARLIE FRITSCHE
                                                TITLE: VICE PRESIDENT

VERSION 6.0 (7/19/94)

WA2B

## INDIVIDUAL ACKNOWLEDGMENT

098-62-T469

STATE OF _TEXAS_____ §
                                                        §
COUNTY OF _HARRIS_____ §
                                                        §

This instrument was acknowledged before me on _____, 19____, by _____

_____

(Notary Seal Required for Recordation.)

NOTARY PUBLIC/ _____
                                         (jurisdiction)

Printed Name of Notary _____
My commission expires _____

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____ §
                                              §
COUNTY OF _____ §
                                              §

This instrument was acknowledged before me on _____, 19____, by _____

_____

(Notary Seal Required for Recordation.)

NOTARY PUBLIC/ _____
                                         (jurisdiction)

Printed Name of Notary _____
My commission expires _____

---

## CORPORATION OR PARTNERSHIP ACKNOWLEDGMENT

STATE OF _TEXAS_____ §
                                                        §
COUNTY OF _HARRIS_____ §
                                                        §

This instrument was acknowledged before me on _Ma-18_____, 19_SY_, by _CHARLIE FRITSCHE_____

_VICE PRESIDENT_____ of _H.C. ELLIOTT HOMES, INC._

a _____, on behalf of said _CORPORATION_

(Notary Seal Required for Recordation.)

DARLENE M. GLOS
Notary Public, State of Texas
My Commission Expires 1/23/94

NOTARY PUBLIC/ _____
                                         (jurisdiction)

Printed Name of Notary _____
My commission expires _____

---

After Execution
Please Return to:

General Warranty Deed with Vendor's Lien
in favor of North American Mortgage Company®,
a Delaware corporation


Return TO:
BETH B. CHERAMIE
21614 BAY PALMS DRIVE
KATY, TX 77449

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

FILED

94 MAY 23 PM 2: 31

COUNTY CLERK
HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS |
COUNTY OF HARRIS |
    I hereby certify that this instrument was FILED in File Number
Sequence on the date and at the time stamped hereon by me; and was
duly RECORDED, in the Official Public Records of Real Property of
Harris County, Texas on

MAY 2 3 1994

Beverly B. Kaufman

COUNTY CLERK
HARRIS COUNTY, TEXAS

3044

94113219/06/1C

**P874650**

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

STEWART TITLE HOUSTON DIVISION

WHEN RECORDED RETURN TO:
NORTH AMERICAN MORTGAGE COMPANY®
P.O. BOX 4800
HOUSTON, TX  77210-4800
RECEIVING DESK

05/25/94   06029221   P874650   $ 18.00

_____ [Space Above This Line For Recording Data] _____

H97                                                                                        190494-614

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on          MAY 12TH,
1994 . The grantor is BETH B. CHERAMIE , A FEME SOLE

("Borrower"). The trustee is
CHARLES M. JACKSON, JR.                              , whose address is   10370 RICHMOND ,
STE 300, HOUSTON, TX  77042            ("Trustee"). The beneficiary is
NORTH AMERICAN MORTGAGE COMPANY®

, which is organized
and existing under the laws of          DELAWARE          , and whose address is    3883 AIRWAY DRIVE ,
SANTA ROSA, CA  95403                                    ("Lender"). Borrower
owes Lender the principal sum of SEVENTY TWO THOUSAND SEVEN HUNDRED ONE AND 00/100
Dollars (U.S. $    72,701.00    ). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid
earlier, due and payable on          JUNE 01, 2024          . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note;
(b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For
this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described
property located in   HARRIS                        County, Texas:
LOT TWENTY-FOUR (24), IN BLOCK EIGHT (8) OF WESTFIELD VILLAGE,
SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING
TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 293, PAGE 53 OF
THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

SEE RIDER(S) HERETO ATTACHED AND EXPRESSLY MADE A PART HEREOF.

which has the address of      21514 BAY PALMS DRIVE          ,   KATY
                                              [Street]                                          [City]
Texas          77449            ("Property Address");
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**TEXAS**-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              FORM 3044 9/90
REA 3044
VERSION 3.0 (03/20/91)                          Page 1 of 6            Initial                              LS110TXA



EXHIBIT
B

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

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all the sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.**  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.

REA 3044
VERSION 4.0 (03/20/91)

Page 2 of 6   *BBC*   Initial

FORM 3044 9/90
LS110TXB

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

Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in Paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the

REA 3044
VERSION 4.0 (03/20/91)

*BbC* Initial

FORM 3044 9/90
LS110TXC

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

total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall

not apply in the case of acceleration under paragraph 17

098-62-T464

19. **Sale of Note; Change of Loan Servicer** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Substitute Trustee.** Lender, at its option, and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

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

**24. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**25. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**26. Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

**28. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate]
THE NOTE SECURED HEREBY IS PRIMARILY SECURED BY THE VENDOR'S LIEN RETAINED IN THE DEED OF EVEN DATE HEREWITH CONVEYING THE PROPERTY TO BORROWER, WHICH VENDOR'S LIEN HAS BEEN ASSIGNED TO LENDER, THIS DEED OF TRUST BEING ADDITIONAL SECURITY THEREFOR.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Beth B. Cheramie_____ (Seal)
BETH B. CHERAMIE                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

STATE OF TEXAS; COUNTY OF _Harris_

This instrument was acknowledged before me on _May 19, 1994_

by _Beth B. Cheramie_

Commission Expires:                    Printed: _____
                                              Notary Public, State of Texas

DARLENE M. GLOS
Notary Public, State of Texas
My Commission expires 7/23/94

REA 3044                                              FORM 3044 9/90
VERSION 6.0 (07/92)          Page 6 of 6                LSI10TXF

R145

# PLANNED UNIT DEVELOPMENT RIDER

190484-614

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 12TH day of MAY 19 94 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NORTH AMERICAN MORTGAGE COMPANY®

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:
21614 BAY PALMS DRIVE, KATY, TX 77449

(Property Address)

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

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as
WESTFIELD VILLAGE

(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Beth B. Cheramie .......................... (Seal)
BETH B. CHERAMIE                          -Borrower

................................................ (Seal)
                                          -Borrower

................................................ (Seal)
                                          -Borrower

................................................ (Seal)
                                          -Borrower

**MULTISTATE PUD RIDER**—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT     Form 3150 9/90

VERSION 6.0 (03/03/93)                                                    LRI113USA

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

FILED

94 MAY 23 PM 2: 31

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS }
COUNTY OF HARRIS }
    I hereby certify that this instrument was FILED in File Number
Sequence on the date and at the time stamped hereon by me; and was
duly RECORDED, in the Official Public Records of Real Property of
Harris County, Texas on

MAY 2 3 1994

*Beverly B. Kaufman*

COUNTY CLERK
HARRIS COUNTY, TEXAS

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

### THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Matter No.: 107931-TX

Date: November 29, 2022

County where Real Property is Located: Harris

ORIGINAL MORTGAGOR:    BETH B. CHERAMIE, A FEME SOLE

ORIGINAL MORTGAGEE:    NORTH AMERICAN MORTGAGE COMPANY

CURRENT MORTGAGEE:    MTGLQ INVESTORS, L.P.

MORTGAGE SERVICER:    NewRez LLC, F/K/A New Penn Financial, LLC, D/B/A Shellpoint Mortgage Servicing

DEED OF TRUST DATED 5/12/1994, RECORDING INFORMATION: Recorded on 5/23/1994, as Instrument No. P874650 in Book 098-62 Page 1460

SUBJECT REAL PROPERTY (LEGAL DESCRIPTION): LOT TWENTY-FOUR (24) IN BLOCK EIGHT (8) OF WESTFIELD VILLAGE SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 293 PAGE 53 OF THE MAP

RECORDS OF HARRIS COUNTY, TEXAS.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on 1/3/2023, the foreclosure sale will be conducted in Harris County in the area designated by the Commissioners Court, pursuant to Section 51.002 of the Texas Property Code as the place where the foreclosure sales are to take place. If no place is designated by the Commissioners Court, sale will be conducted at the place where the Notice of Trustee's Sale was posted. The trustee's sale will be conducted no earlier than 10:00 AM, or not later than three (3) hours after that time, by one of the Substitute Trustees who will sell to the highest bidder for cash, subject to the unpaid balance due and owing on any lien indebtedness superior to the Deed of Trust.

NewRez LLC, F/K/A New Penn Financial, LLC, D/B/A Shellpoint Mortgage Servicing is acting as the Mortgage Servicer for MTGLQ INVESTORS, L.P. who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. NewRez LLC, F/K/A New Penn Financial, LLC, D/B/A Shellpoint Mortgage Servicing, as Mortgage Servicer, is representing the Mortgagee, whose address is:

MTGLQ INVESTORS, L.P.
c/o NewRez LLC, F/K/A New Penn Financial, LLC, D/B/A Shellpoint Mortgage Servicing
55 Beattie Place
Suite 110
Greenville, SC 29601

Page 1 of 2





AP NOS/SOT 08212019



FILED 12/12/2022 11:32:52 AM    FRCL-2022-6244    TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

Matter No.: 107931-TX

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

**WHEREAS, in my capacity as attorney for the Mortgagee and/or its Mortgage Servicer, and pursuant to Section 51.0076 of the Texas Property Code, I HEREBY APPOINT AND DESIGNATE AUCTION.COM, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, MEGAN L. RANDLE, EBBIE MURPHY, PAUL A. HOEFKER, ROBERT L. NEGRIN** or either one of them, as Substitute Trustee, to act, either singly or jointly, under and by virtue of said Deed of Trust and hereby request said Substitute Trustees, or any one of them to sell the property in said Deed of Trust described and as provided therein. The address for the Substitute Trustee as required by Texas Property Code, Section 51.0075(e) is Auction.com, 1 Mauchly, Irvine, CA 92618.

Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

By: _____

Paul A. Hoefker, Attorney
Robert L. Negrin, Attorney
Aldridge Pite, LLP
4414 N. Frost Oak Road, Suite 205
Houston, TX 77002

Return to:
ALDRIDGE PITE, LLP
4375 JUTLAND DR., SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
FAX #: 619-590-1385
866-931-0036

UNOFFICIAL COPY